# Colonial Trust Company's Appeal.

*Mortgages—Trusts and trustees—Corporation mortgages—Construction—Bonds—Payment pro rata.*

The trustee under a mortgage given by a corporation to secure an issue of bonds showed by its final account the receipt of certain moneys, proceeds of securities which by the terms of the mortgage were to be held for the equal pro rata benefit of the holders of bonds issued under the mortgage "without preference or priority of one bond over another," and the payment of these moneys to the mortgagor, to be used for the cancellation of certain bonds unissued and in the latter's treasury. It appeared upon the audit that the trustee knew that other bonds were outstanding in the hands of third parties, to whom it gave no notice of this transaction. *Held,* that it was the duty of the trustee to use the fund in its hands for the pro rata protection of all the bondholders who were entitled to the security of the mortgage, and it was bound to ascertain how many of such bonds were issued and outstanding in the hands of the holders for value at the time, and that having made voluntary distribution without application to court, it was properly to be surcharged with the sum so paid, in favor of the holders of outstanding bonds who proved their claim at the audit.

Argued April 29, 1913. Appeal, No. 213, Jan. T., 1912, by The Colonial Trust Company, from decree of C. P. No. 5, Philadelphia Co., Sept. T., 1910, No. 769, dismissing exceptions to auditor's report in re First and Final Account of The Colonial Trust Company, Trustee under a Mortgage given by the Continental Hotel and Cafe Company. Before FELL, C. J., MESTREZAT, POTTER, ELKIN and MOSCHZISKER, JJ. Affirmed.

Exceptions to report of Robert W. Archbald, Jr., Esq., auditor, surcharging a trustee for bondholders under a corporation mortgage. Before MARTIN, P. J.

From the record it appeared that on June 1st, 1905, the Continental Hotel and Cafe Company executed a mortgage in trust to the Colonial Trust Company to secure an issue of bonds of the aggregate amount of

$75,000 by which the hotel company assigned to the trust company insurance policies on the life of Henry E. Maltby, the manager of the hotel, in the sum of $25,000, and a lease dated May 1st, 1905, by the Netherlands' Company to the Continental Hotel and Cafe Company of the lot at the southeast corner of Ninth and Chestnut streets in Philadelphia, and the buildings erected thereon known as the Continental Hotel, and fire insurance policies in the sum of $50,000 on furniture and other equipments of the hotel company.

By this mortgage the hotel company covenanted to pay to the trustee for the purpose of retiring the bonds the sum of $7,500 on June 1st, 1906, and $7,500 on June 1st, 1907, and annually thereafter on June 1st of each year the sum of $8,500.

The habendum clause of the mortgage was in part as follows:

"To have and to hold the same unto the said Trustee, its successors and assigns forever, in trust, nevertheless, for the equal pro rata benefit, security and protection of the several persons and corporations who shall be or become the holders of any of the bonds issued or to be issued hereunder, for the due and punctual payment of the same, and the interest thereon as the same shall become due, without preference of one bond over another, according to the tenor and effect of said bonds and the interest coupons thereto attached and hereby secured .........."

The mortgage further provided:

"The said hotel company shall have at its option the right to redeem all or any part of the said securities hereby pledged by the payment to the said trustee of one hundred and two and a half (102½) and interest to-date on such of them as may be then outstanding issued hereunder. All moneys received by the said trustee for the redemption of securities deposited hereunder, shall at the option of the said hotel company, be applied to the purchase of the bonds issued hereunder at one

hundred and two and a half (102½) and interest to-date, or for less sum, if possible, or the said sums at the option of the said hotel company shall be held and invested by the said trustee for the use, benefit and behoof of the holders of the bonds issued hereunder without distinction or priority between them.

"Should the said hotel company exercise its option to redeem the said bonds at one hundred and two and a half (102½), it shall have the right to determine which of said bonds shall be so redeemed, and shall forthwith notify the said trustee of its intention to redeem certain bonds. The said trustee shall forthwith notify the holder of the said bonds of the intention to redeem the same........."

At various times, the cafe company borrowed of the Colonial Trust Company, trustee for bondholders, under the mortgage, sums aggregating $35,000, and pledged as security for these loans, the issue of bonds.

As successive purchases of bonds by outsiders were made, the money was paid to the trust company and applied by it in reduction of the above loans. The trust company released certain bonds of those pledged, which bonds were then handed over to the purchaser. In this manner, the appellees here became possessors of their bonds. By these means the amount of the $35,000 loan was reduced by December 11, 1906, to $16,000, and at that time the trust company held $48,500 worth of bonds as security for the payment of this balance.

When Maltby died, there were in the hands of outside holders for value, thirty-one bonds of $15,500 worth; there had been cancelled, fifteen bonds, or $7,500 worth; the cafe company had in its possession, seven bonds, or $3,500 worth, which were unissued; the remaining ninety-seven bonds ($48,500 worth) were in the possession of the trust company as security for its loan, which was then reduced to $16,000. Twenty-two thousand three hundred and seventy-two dollars and ninety-five cents ($22,372.95) was received from the policies on

Maltby's life, and $102.33 was received on one of the fire insurance policies, leaving a total in the hands of the Colonial Trust Company, as the proceeds of the fire and life insurance, of $22,475.28. This was disposed of as follows: Sixteen thousand dollars ($16,000) was applied to the payment of the loan of the Colonial Trust Company, the mortgage trustee, which was thus settled in full; $6,475.28 of it was paid over by the Colonial Trust Company to the Continental Hotel & Cafe Company, the mortgagor. This money was used by the cafe company to cancel six bonds in its treasury which had never been issued, and a balance remaining was employed by the cafe company for its own purposes. No money was paid the outstanding bondholders who were holders for value to the extent of $15,500. In this transaction forty-four bonds ($22,000) were cancelled with their interest coupons, being thirty-eight of the bonds held by the trust company as collateral for its loan, and the six bonds which had never been issued.

The trustee filed its account, showing the receipt of $22,533.32, and the distribution of the whole thereof, leaving no balance in its hands. Exceptions were filed by four bondholders who had received nothing on their bonds, and by the substituted trustee under the mortgage, claiming surcharges upon the accountant. An auditor was appointed, who surcharged the accountant with the sum of $6,457.28 with interest. It appeared that the trustee in making the payments complained of had acted with the approval of its counsel.

Exceptions to the auditor's report, filed on behalf of the accountant, were dismissed by the court. Accountant appealed.

*Error assigned* was in dismissing the exceptions.

*John G. Johnson,* for appellant.

*Chester N. Farr, Jr.,* with him *J. Claude Bedford* and *W. Horace Hepburn,* for appellees.

OPINION BY MR. JUSTICE POTTER, June 27, 1913:

This is an appeal from the affirmance by the court below of the report of an auditor appointed to pass upon exceptions to the account of the Colonial Trust Company, trustee under a mortgage given by the Continental Hotel and Cafe Company to secure an issue of bonds. The account showed the receipt of $22,533.32, and the distribution of the whole of it, leaving no balance on hand. Under the terms of the mortgage, the proceeds of the securities were to be held for the equal pro rata benefit of the holders of any of the bonds issued under the mortgage, "without preference or priority of one bond over another." The trustee used the fund in its hands for the redemption of forty-four bonds outstanding, and apparently overlooked the claims of other persons who were the holders of outstanding bonds to the extent of $15,500. The auditor concluded as matter of law, "1. That the accountant was not authorized by the terms of the mortgage referred to, to apply the proceeds of the life and fire insurance policies to the redemption of any bonds to the exclusion of others, or in any other manner than for the equal benefit of all bonds. 2. That neither good faith nor the advice of counsel will relieve the accountant from liability for the misapplication of these funds." Accordingly, he surcharged the accountant with the sum of $6,457.28, with interest. This amount, it appears, was the sum left in the hands of the trustee after the payment of a loan to itself for which certain bonds were pledged with it as collateral. Having paid the debt due to itself, the trust company turned over the balance of the fund to the mortgagor. The auditor finds as a fact that the trustee knew that bonds to the amount of $15,500 were outstanding and in the hands of other bondholders to whom it gave no notice of this transaction. It apparently acted upon the theory that it had a right to use the remainder of the fund for the purpose of cancelling bonds unissued and in the treasury of the mortgagor. We are unable, however, to

see any justification for this action.   Clearly it was the
duty of the trustee to use the fund in its hands for the
pro rata protection of all the bondholders who were en-
titled to the security of the mortgage, and it was bound
to ascertain how many of such bonds were issued and
outstanding in the hands of the holders for value at the
time.

Counsel for appellant does not seek to justify the pay-
ment to which exception was taken, and which was dis-
allowed by the auditor; but he contends that the mis-
take of the trustee was one of judgment or was "a mis-
take of law in construing an ambiguous writing," and
that it was guilty neither of gross neglect nor of wilful
default, and that it should not be surcharged for such
a mistake.   The excuse is not sufficient.   The lawful
claims of the bondholders are not to be refused on ac-
count of a mistake of this nature by the trustee.   If it
was in doubt as to the manner in which distribution of
the funds was to be made, it might have made applica-
tion to the court and secured a judicial order of distri-
bution.   Having made voluntary distribution without
application to the court, it did so at its own risk.   More
especially should this principle be enforced where, as in
this case, payment was made, not to the bondholders,
whom the accountant represented as trustee, but to the
obligor in the bonds, the debtor itself.

We do not see that appellant has any reason to com-
plain of the ratio of distribution adopted by the auditor.
The full amount due upon the loan made by it, $16,000,
was allowed, and after that was done it could have no
interest in the distribution of the amount realized from
the surcharge.   The auditor was right in holding that
distribution should be made only to such bondholders
as appeared and made proof of their claims.   It is a fair
inference that when after full notice, bonds are not pre-
sented, they are not outstanding for value.   Particularly
where the issue is small, as here, and was in the hands of

few persons having apparently full knowledge of the situation.

We see no merit in any of the assignments of error. They are all dismissed, and the decree of the court below is affirmed.